Clearingly call the next case 1866, Amy Kearns II v. Sparrow Health System, a Michigan non-profit corporation, et al. and Dr. Charles Strickland, a Washington, D.C. State University candidate, 50 minutes to be carried by defendants. Mr. Stoops, will you tell us? Good morning, your honors. May it please the court. Kevin Stoops on behalf of the plaintiff appellant, David Ferris. With your permission, I'd like to reserve five minutes for rebuttal. Very well. Your honors, this case, contrary to defendants' arguments, is not about negligence. It is about recklessness. Well, it is our position that the record is replete with incorrect statements and incorrect methodologies. That's just helpful to me. So at a minimum, you would agree you have to show a triable issue of fact over whether the doctors acted recklessly? Absolutely. Your honors, it's my understanding of Sixth Circuit law that under Sanders v. Jones that the plaintiff, to withstand a claim of qualified immunity, must make a substantial showing that the defendant stated deliberate falsehood or showed reckless disregard for the truth. It's plaintiff's position that the two opinions and conclusions that the defendant doctors repeatedly stated to the police and prosecutors, all of which formed the cornerstone for the finding of probable cause, and it's not disputed in this case. Just remind me, your experts say what they did was reckless? They go a step further and say not only was it reckless, that it's not even within the scope of forensic science to make these statements. I'm not interested in that one. Do they say reckless or reckless disregard for the truth or lies? Do they say that? I don't want to hear anything else. Do they say that one? No, sir. Okay, so why isn't that a real problem? In other words, if all you have are doctors debating what forensic science requires in a given area, that's why they would characterize what you're doing as a fight about the standards of care and negligence. It seems to me you've got to get an expert to come forward and say what they did was reckless. I respectfully disagree, your honor, and I've read cases from this court that indicate that it's not the expert's position to determine the grade, where that fits in legal terms, where the improper conduct fits. Was it reckless? Was it with malice? Was it intentional? The experts, in this case medical examiners, can only provide an opinion as to their standard of care and their expertise. Where did this fall within that? The experts in this case indicated that the finding that these injuries had to be inflicted by an adult were outside the scope of medical evidence, forensic evidence. The finding that these injuries what? There were two findings by the doctors that were complaining were, if not intentionally erroneous, at least a reckless disregard for the truth, and those are that Kayla, the decedent's injuries had to be inflicted by an adult. That's finding one. And finding two, that those injuries had to be inflicted within minutes to hours of her death. The experts in this case, on both sides, including now the admissions by the defendant doctors, have indicated that it is not within the scope of forensic science, not within the scope of a medical examiner's expertise, to make a determination or render a conclusion on the amount of force necessary to cause these types of injuries. It is simply outside of their purview. It was improper for defendant that these injuries must have been inflicted by an adult. So you just said your experts say what they did was improper, but just a little bit ago you said it's not fair to require them to say it was reckless. I don't understand that distinction. We get cases all the time where the experts come forward and say this was reckless, given what forensic investigators do, and you've just admitted they can say it was improper or beyond the scope. I'm not getting your point. It just seems like all you've done is establish some people disagreed under medical standards of care what the right way to think about this was. And that's fair. The record does show that. But that would normally be a negligence debate, not proof of recklessness. And that's what you need. I guess one way to answer your question would be implicit in a finding that it's outside the scope of any expertise that they can ever render a conclusion on is that it is reckless. I don't think that's right. Because you can have a doctor say, listen, I'm uncomfortable with the idea that someone can look at someone's head, examine the x-rays and be able to say what happened. That's a fair thing to say. That doesn't prove someone who reaches the opposite conclusion was reckless. It proves that someone said, no, I can look at the x-rays, I can hear the facts, and I can draw that conclusion. That's just a disagreement among experts about the standard of care and what you can or can't do. Except that the defendants, the actual defendants in this case, have acknowledged in the depositions that we took that they could not have issued those opinions. Dr. DeYoung now says, well, that's not really what I said, that's not what I meant. Because I couldn't. I could never have said that, is what she says. And Dr. Schmidt was also questioned, and he said, no. As a medical examiner, we could never pontificate on whether it was an adult force. We simply don't have that ability. Maybe I'm misunderstanding your argument, but it sounds as though you're saying that a physician, an expert couldn't look at an injury and opine as to the amount of force required to inflict the injury. And you move from there to talking about whether the injury could have been inflicted by an adult or not. But it sounds as though you're saying that a medical expert couldn't look at an injury and give an opinion as to the amount of force required to cause that injury. And that doesn't sound right. That's absolutely correct, Judge Clay. What's correct? What I just said? Forensic experts, medical examiners cannot opine as to the amount of force of the injuries. They do not have. Well, I think they can opine, is what I'm saying. And that's why I was calling into doubt your statement that they couldn't opine. I don't know why a medical expert couldn't look at an injury and render an opinion as to the amount of force required to create that injury. And if your argument is that that's not so, perhaps you can explain your argument because I'm not following you. I'm not a doctor, Your Honor, but I've learned a lot about this field and this case. And the testimony from the defendants, and I'll cite Dr. Schmidt's decision testimony, with respect to what force is necessary, he says, such a determination is outside the scope of knowledge scientifically of a forensic pathologist to formulate or to offer any opinions on whether this had to be caused by an adult. That's Dr. Schmidt's testimony. I don't know the context of that testimony, and even if I did, I don't know if I want to rely upon that particular testifier. So I was really asking you to explain the basis for your argument that a physician couldn't look at an injury and offer an opinion as to the amount of force required to inflict the injury. Again, Your Honor, this is information gleaned from not only our experts but defendants' experts, Dr. Sina, who said that these injuries, you cannot attribute a quantifiable force to these types of head injuries. Well, are you talking about, I was asking in general how such an opinion might be rendered. It sounds as though you're referring specifically to the injuries in this particular case, which would pertain to the testimony about the injuries inflicted on this victim, which might be a little different thing. I would assume that much would be taken into account in an autopsy or whatever, and the testifier would explain the context and all the factors that went into rendering an opinion. But that's different from saying that a physician can't look at an injury and determine the amount of force that created the injury. It's my understanding, based on the criminal proceedings in this case, and there was a Daubert motion brought on this exact issue, that the prosecutors there determined that the proper proponent of this type of testimony as to amount of force is a biomechanics expert, not a medical professional. That's my understanding, and that's consistent with everything we've learned from all experts, defense experts, plaintiffs' experts, throughout this litigation. So that was the mistake, not bringing one of those people in? No, the mistake, well, once they brought in that person, once the criminal defense attorneys proffered an expert, defendant DeYoung was excluded and stipulated that she would not speak to force at a trial if the case was to go to trial. But all of the mistakes happened well before that. Dr. DeYoung, on the day of the autopsy, before microscopic slides are created, and continuing thereafter, said to the police officer, this had to have been caused by an adult, and it had to have been caused, the injuries, within minutes to hours of death. All of the testimony to those two points have since been recanted by the defendants. The defendants have now since acknowledged, could never have made those opinions or conclusions, because we don't have that within our expertise. Could never have said, minutes to hours, these injuries could have been 24 hours or 48 hours. Well, that's a big picture point, maybe for your rebuttal, but, you know, child abuse is a very serious thing. I mean, it's treated as a disease in the medical community. So you've got this serious problem, and you have cause for concern. All you need is probable cause that perhaps this was not an accident or some preexisting injury. And we know the investigators and the attorneys can't figure this out. And how are we ever going to get medical professionals to offer advice and opinions about what to do if they're stuck with liability? So it just seems to me that's the thing you have to come to grips with on this case. And it's a really serious problem, and I think you probably have shown a triable issue of fact that maybe there were some mistakes. But on this record, I would say there's still probable cause, for what it's worth. I still think there's probable cause. It doesn't prove there's beyond a reasonable doubt. It doesn't even prove more than 50%. But it's a pretty funny thing to look at. And I appreciate that, and I've thought about this case for three-plus years, and I've thought of these arguments, and I've listened to the defendants, and I listen closely. And as a father of three children also, I do not condone child abuse, nor do I want that to be rampant. I want these doctors to be able to provide their opinions. The police, the prosecutors, the lawyers, people like us, we don't know medicine. That's not our job. But when they act outside of their expertise completely, when they are offering conclusions that, of course, a police officer is going to rely on, a police officer should rely on it, and they say something that is completely outside of their scope of expertise, and then the police and prosecutors in this case admit that those two opinions, only those two opinions form the cornerstone for probable cause, that sustains the plaintiff's burden to defeat qualified immunity in the case you go to a jury. And I see that. I know you're out of time, but just to be clear as to what your argument is, are you arguing that the medical professional's opinions were incorrect, negligence, perhaps grossly negligent and not to be believed, or are you going further and arguing that the opinions were fabricated or that the opinions were based upon fabricated evidence by these medical professionals? I'm absolutely going further, Your Honor. You think it's fabrication? I think when you state something, I think fabrication does not have to rise to the level of taking physical evidence from one autopsy and putting it with another or some of the other things we've seen in cases. I think when you state an opinion or conclusion that you have no basis to state, that you know is outside your expertise, that that is a deliberate falsehood or reckless disregard for the truth such that it arises to fabrication. So you're not arguing that they fabricated physical evidence. You're arguing instead that their opinions were fabricated in the sense that the opinions represented deliberate falsehood. Is that your argument? That's absolutely correct, Judge Clay. Okay. Thank you. Thank you. May it please the Court, Michael Vanner for Sterile Health System, Dr. Joyce DeYoung, Dr. Rudolph Castellani. I will be taking ten minutes and Brother Counsel will take the last five minutes. All right. I want to start with an issue that doesn't specifically address what Counsel just told you, but I think is important in this case. There are two issues in any qualified immunity case. Was a constitutional right violated? And if so, was that clearly known at the time of the acts in question? The case law tells us we can take them in either order. If we take the second argument first in this case, I think that as far as this appeal goes, there is no viable argument. If we come to the conclusion that negligent or perhaps even reckless offering of opinions is a civil rights violation, there's nothing in the case law before today that would have tipped anyone off that that was the case. You just said it rises to the level of fabrication. Isn't that pretty well established? Absolutely if this were in fact fabrication. But that takes you back to step one. That's not a civil right. Correct. Correct. If you determine that this is fabrication. But all of the case law that talks about this specific topic of investigators and any definition of fabrication you can find anywhere does say that you manufacture evidence or you misrepresent evidence. Nothing that I can find anywhere says that fabrication includes offering an opinion that you honestly believe that someone says is beyond the scope of what you should say. I may be wrong, but if I honestly believe it, I'm not fabricating. I can't find any definition that says otherwise. He would say it's a deliberate falsehood because everybody knows you can't, even if you honestly believe it, you can't opine on this particular topic. That's deliberate and that's false. That's his point. Then we would have to ask the question before this case and even as of today, is there anything that would put one on notice that offering an honest opinion is defined as fabrication? And I don't think we have that anywhere either. I think what we have and I think Judge Yonker found very correctly after a review of the evidence and I'm going through this and preparing my outline and realizing I'm quoting page 14,521 of the record and thinking there's been a mound of evidence here and Judge Yonker told us he went through it all and he concluded that this was nothing more than the honest expression of the beliefs of these three doctors and I believe that's all it was. And there is no precedent that I'm aware of that says an honest expression of your belief could be defined as fabrication. So we go back to the first prong then. Was this in fact a violation of the constitutional rights? One of the points that Mr. Stoops highlights at length is that the defendant supposedly admitted that they should never do this and that they retracted everything they said earlier. He talks about the comment by Dr. Schmidt and Judge Clay, I believe you said you wanted to know the context. The question immediately preceding the statement that this is something that forensic pathologists don't do was and I'll quote, if you'll give me just a second. Question. So doctor, you told me there is no way for you to be able to say how much force is necessary to cause these types of injuries. Whether it's a pound, five pounds, ten pounds, 200 pounds, you can't say that, correct? Correct. He agrees he can't tell you foot pounds. A biomechanics expert might give that a shot. All the literature says that they can't be terribly accurate, but they're going to be probably more accurate than someone who doesn't do biomechanics testing. But when Dr. Schmidt was asked to comment, he was asked, can you say a number of foot pounds? My analogy, if I am sitting in the ballpark and I watch one of my favorite players hit the ball out of the stadium over and out into the street, I can't say he hit that with X number of foot pounds. I can't say he hit it really hard. I can't say a seven-year-old couldn't hit it that hard. I can say I couldn't and probably most of us in this room couldn't. I can certainly form a general opinion that took a lot of force. If I'm a veteran, I'm going to be better equipped to pick an amount, to comment on in general an amount of force. If I'm a forensic pathologist... Are you making the point that this explains why they retracted them? I don't know which point you're making at this point. I'm making, well, there's two points. Number one, I don't believe they ever retracted them. And that they were reasonable then, it must be. The second comment would be yes, it is reasonable, and in fact there's even testimony in the record that forensic pathologists are asked to make a comment like this. In general, what do you think? Is this consistent with the factual explanation we've been given? Could this have caused these fatal injuries? So I believe it is reasonable in a general sense for someone to say this is... For a forensic pathologist to say, I don't buy this explanation, this explanation is plausible. As far as recanting, the only testimony that's ever come in that Dr. DeYoung or anyone else very specifically said it must be an adult, no exceptions, is from a detective and from, I believe it was a child protective services worker. None of the defendants ever admitted to saying anything of that sort. They said, I don't think it was an adult. Excuse me, I don't think a child could have done this, but I can't rule out the possibility. So there may be a factual dispute as to whether they said it, but there's no evidence that they ever recanted. Now, as Judge Yonker pointed out... I think that as a part of their opinions, they made it relatively clear that there was an element of speculation involved. In the one place where Dr. DeYoung testified under oath, the preliminary exam, where it's her words, and this has been quoted at length, she said she was asked, could a child have done this? I don't believe so. That's the closest she came, and Judge Yonker, in his opinion, emphasizes that point. And Dr. DeYoung explains that she's asked this question, or she's answering this question, because she's been told the stories of the 7-year-old girl. I'm not going to name her, but I'm sure you've seen there was a 7-year-old girl who was with the baby along with the father. And initially, her first two statements said, well, Dad was playing various games with the kids. Four months later, the 7-year-old came forward with a statement that said, I was holding her, and I fell and hit the bed. And we're not sure if it's a bed post or bed frame, but she fell with the baby and hit the bed. And she shoved the baby off the couch into the coffee table. And so what Dr. DeYoung was being asked was, is this plausible? Does this explain the injuries? And she said, I don't believe so. She never anywhere in this record definitively says it couldn't have happened. Do you agree that the standard is recklessness? No. What's the way to look at it? No, that I don't. And there's a couple of cases that I would cite for you on that, Your Honor. Give us the words you think are the right way to formulate the standard. Negligence is not enough. Recklessness is not enough. Deliberate fabrication is required. Intentional wrongdoing. Sixth Circuit case Allers v. Scheibel, 188 F. 3rd, 365. A successful 1983 claimant must establish that the defendant acted knowingly or intentionally to violate his or her contract. Such that mere negligence or recklessness. If recklessness is the standard, do you lose? Does it go to a trial? No. I don't think so. I don't think we can establish recklessness merely by the ipsy-dixit of two experts coming in and saying, I don't think that was appropriate to do. Because I don't think that was appropriate for a forensic pathologist to do is, I believe, nothing more than a professional disagreement on whether someone should offer that opinion. And there's at least the forensic pathologists in this case were comfortable doing so. And the experts that were hired to come in said they shouldn't. I'll note that originally, during the criminal proceedings, the first two experts on behalf of plaintiff never said that this was inappropriate. All they ever said was this was wrong. In fact, initially they were saying this wasn't even a homicide. It was wrong to ever call it a homicide. The child might have been killed 72 hours earlier. One expert even said it could have been weeks or months earlier. They tried to blame the fall down the stairs from a month earlier where the MRI or the CT scan admittedly obscured by motion but didn't show any significant injury. At one point, it's in the record here, they even tried to blame it on the child being hit in the head with a Labrador retriever's tail. So the initial experts never said this was out of line. It was only when the argument that it was never a homicide fell apart that they then started trying to nitpick and say no forensic pathologist would ever say, I think this took a lot of force, the child couldn't have done it, it must have been an adult. I believe that, but I can't say that with certainty. Do we have any opinion in the case rendered by the experts of the plaintiff that the opinions of the defendant doctors were actually fabricated? I know they say that the opinions were wrong and incorrect and ridiculous and all that, but does anyone, do any of them say that the opinions were fabricated or represented deliberate falsehoods? Never. And if I had time to go through both of the seven-hour depositions of their experts, one of them actually said, no, I'm agreeing with all of the findings. I disagree with the conclusions they draw from those findings. And there's not a single finding in here anywhere that's been identified that is said to be wrong. They argue, well, here's what you're missing. Yeah, there's new blood here, but there's also old blood from an old injury, and that's why you can't conclude that this was child abuse or that this was a recent injury that caused this homicide. But they never say, no, your findings in the autopsy are wrong. Thank you. Thank you, guys. Good morning, Your Honors. Doug Vandenberg, appearing on behalf of Defendant Aptly, Dr. Carl Schmidt. Plaintiff's counsel made a number of statements that I disagree with that I think are incorrect, but I'm not going to respond point by point. I'm going to rely on the briefs to do that. And then a factual clarification. Dr. Schmidt did not testify ever as to the amount of force that might have been necessary for this or that it must have been committed by an adult. The plaintiff seems to suggest that a lot or mix it in a lot. But I just clarify that for the record, that Dr. Schmidt did not do that and that none of the investigators ever attributed that statement to Dr. Schmidt. There are seven undisputed or uncontroverted facts and circumstances that I believe show that the differences of opinion between the plaintiff's experts and the defendants here do not equal evidence of intent to deceive or fabrication. First one's a little long, then the next ones get a little shorter. The first one is that Dr. Schmidt has a great deal of experience as a forensic pathologist in cases of child abuse or suspected child abuse. And he is widely recognized as an expert in this area and he's the chief medical examiner for Wayne County and has been since 2003. He has consulted on approximately 200 cases of child abuse or suspected child abuse, including this Ferris case. And he has used the same essential methodology to review and analyze evidence and form his cause of death opinions in all of these cases. Second, Dr. Schmidt has testified in approximately 30 cases of child abuse or suspected child abuse and his cause of death opinions have never been stricken. There have been two deliberate challenges to the reliability of his opinions and both such motions were denied and he was allowed to testify. Third, there were two Michigan circuit judges who reviewed and considered the cause of death opinion of Dr. DeYoung and Castellani, namely that Kayla died as a result of inflicted trauma to the head at multiple locations, which is also Dr. Schmidt's opinion. And both of those judges found their cause of death opinion to be either highly credible or to be reliable and admissible under MRE 702. Fourth, this same essential cause of death opinion was on the death certificate and on information and belief remains there and has not been changed as a result of the opinions offered in this case by the plaintiff's experts or anybody else. Fifth, neither of the plaintiff's experts claim that the defendants have identified an incorrect cause of death. Sixth, the defendant's essential cause of death opinions are shared by at least six different forensic pathologists. The three defendant pathologists in this case, plus Dr. Rayford, the Wexford County medical examiner who signed the death certificate, and Dr. Sina and Dr. Whedon, two well-qualified defense experts who reviewed this case. Also, the plaintiff's expert, Dr. Schuman, admitted at his deposition that a reasonable forensic pathologist could come to the conclusion that Kayla died as a result of intentionally inflicted trauma. Seven, there is no evidence or allegation that any of the defendants tampered with or concealed evidence, made false statements of fact, or had any motive or reason to single out plaintiff or to cause him harm. Under these undisputed facts and circumstances, or uncontroverted facts and circumstances, the differences of opinion between the plaintiff's experts and the defendants do not equal evidence of intent to deceive or fabrication. Judge Yonker wrote a well-reasoned and well-supported decision granting summary judgment, and we respectfully request that this honorable court affirm Judge Yonker's decision. With that, I think I'll close my remarks, unless your honors have any questions. Apparently not. Thank you. Thank you. Your honors, defense counsel spends its time talking about issues of resumes and credibility and honest opinions, none of which are supposed to be evaluated at the summary judgment stage with respect to qualified immunity. This court made clear that the reckless behavior is to be evaluated, or alleged reckless behavior is to be evaluated on an objective perspective. Judge Clay asked if the experts in this case, you know, sought more information on how they opined on the behavior of the defendants in characterizing or concluding that these injuries had to be inflicted by an adult. Dr. Opphoven, who was retained by the plaintiffs, stated, Dr. DeYoung had no scientific basis to opine on the amount of force necessary to cause the injuries seen in Kayla Fisher, and she had no scientific basis to inform the police officer. This had to have been committed by an adult or to testify that it could not have been done by a seven-year-old. She went on to say that rendering those opinions were far afield of anybody in their expertise. If, in fact, Dr. DeYoung made those statements to the police, she would have been acting recklessly, if not intentionally distruthful, to what she should have been able to say to the police. Well, you know, if the statements were wrong and even grossly negligent, from what factors would we conclude that the statements were willfully, constituted willful misrepresentations? Just because even if it can be established that they were incorrect, other than the fact that the statements were actually incorrect, if they were, what would be the basis to conclude that they constituted willful misrepresentation? I think the court, much like Judge Yonker, is worried about where do you draw the line? And I get that. Judge Yonker, I think, developed a test that hasn't been adopted by anybody because he was concerned, reasonably, that could this just open Pandora's box and everybody will be sued and nobody will ever assist the police, and we need them to assist the police. I think the line, when you don't have a case where you have the smoking gun and you took blood from one body and transplanted it with some other body, something like that, I think the line needs to be, did the forensic expert, did the toxicology expert, the medical examiner, or whoever it is, did they render an opinion that is completely outside their field? It's not outside their field. It's a medical opinion about a medical matter. It doesn't go outside their field. Yes, Your Honor, it does. It depends on how you define their field, doesn't it? Well, the defendants themselves, including their own expert, has stated that these are not conclusions that are within our field. These are not things we can testify to. These are not things that we can say. They testified, therefore, we were just up there speculating and we don't have any expertise whatsoever. They didn't say that, did they? Yes, Dr. DeYoung said, well, that's not what I would have meant. They must have misheard me, because I would not have told the police officer unequivocally that it had to be caused by an adult. It surprised me when I heard her say that also, but that's what this case uncovered. If that is, in fact, outside the scope of their expertise, as our experts have stated and we believe as they have stated themselves, then that is the line. They didn't think it was outside their scope of expertise, did they? Excuse me? The doctor didn't think it was outside the scope of their expertise, obviously. We've submitted evidence in our brief, which I believe states- Yes or no? Yes, I believe they knew it was outside their- They knew and lied deliberately? Yes, I believe they did, sir. Okay. Well, what would have been their motive for that? I mean, these people are not going to get a salary bonus, presumably, because they're misrepresenting something in autopsy. Why would they do such a thing? I don't know what their motive is, Your Honor, and that's not the question for this stage, but once that's- I believe the motive- That's not the question for this stage, counsel. What their motive was? Why would they lie like that, as you accuse them of? It's ridiculous to say it's not in the case. I believe Dr. DeYoung was completely improper and incompetent to say that from the very beginning, and every statement by any of these doctors after that was to support her original conclusion. They're all lying. That's what I believe in. That's ridiculous. Your Honor, I apologize if that allegation offends the court. Yes, it does.  But I've went through this case for three years, and there was simply no reason for her to state that other than either complete incompetence or for her to be stating what she thought the police wanted to hear. All the other statements after that merely try to support her original statement to the police that this had to be caused by an adult, this had to be within minutes to hours of her death, and only when challenged by counsel, two or three years after the events, did they finally say, well, you know, we shouldn't have said that. That's not what we meant to say. They must have misheard us. All right. Thank you very much for your arguments, and the case is submitted. There being no further cases for argument, the court may be adjourned. Your Honor, the court is now adjourned. Thank you. Thank you. Thank you. Thank you.